NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190159-U

NO. 4-19-0159

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 29, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| JAKI G. PEARSON, | ) | No. 17CF1211 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas J. Difanis, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justices Cavanagh and Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The appellate court affirmed, concluding the sentence imposed against defendant was neither excessive nor an abuse of the circuit court's discretion.

¶ 2     Defendant, Jaki G. Pearson, appeals from his 25-year prison sentence for aggravated battery with a firearm, arguing the sentence imposed against him is excessive and an abuse of the circuit court's discretion given his guilty plea, remorse, minor criminal history, and outpouring of support from his family. We affirm.

¶ 3                         I. BACKGROUND

¶ 4                         A. Information

¶ 5     In September 2017, the State charged defendant by information with three counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2016)) (counts I through III) for discharging a firearm which proximately caused the death of Brandon Smith. Later, the State

charged defendant by information with one count of aggravated battery with a firearm (720 ILCS 5/12-3.05(e)(1) (West 2016)) (count IV) for discharging a firearm which caused injury to Brandon Smith.

¶ 6                                          B. Guilty Plea

¶ 7            In October 2018, the parties indicated they reached a plea agreement. As part of the agreement, defendant would plead guilty to count IV in exchange for the State moving to dismiss counts I through III. The circuit court admonished defendant as to the charge in count IV and the possible penalties. Defendant indicated he understood. The court admonished defendant as to the rights he was giving up if he pleaded guilty. Defendant indicated he understood. The court questioned defendant if his decision to plead guilty was voluntary. Defendant indicated it was. The court questioned defendant if he was forced or threatened to plead guilty. Defendant indicated he was not. The court questioned defendant if he was promised anything outside the plea agreement in exchange for pleading guilty. Defendant indicated he was not. The State provided the following factual basis in support of the plea:

            "The case arises out of events from September 1st of 2017,

            around 12:40 in the morning.

            Prior to that in the area of 1206 Providence Circle No. 110

            this [d]efendant had been hanging out with the victim, Brandon

            Smith, as well as family and friend members and they were joined

            by three other young men, Tavontae Hurd, Malik Hurd and Robert

            Turner. The five, [d]efendant, [the] victim[,] and those three

            witnesses, were in and around a vehicle parked in that parking lot

- 2 -

smoking cannabis and drinking alcohol. The [d]efendant who was in possession of a semiautomatic pistol was, according to the witnesses, tweaking, their words, and at some point raised the gun towards the vehicle. This essentially broke up the party.

The victim and then [d]efendant having apparently calmed down began to walk back towards Apartment 110. The three witnesses reported that some sort of verbal dispute re-arose between the two of them. They heard a shot, turned around and realized that the victim, Mr. Smith, had been shot. They then fled from the [d]efendant two or three blocks away where they located police who were already in the area on an unrelated matter. They and the police returned to the scene and located Brandon who was rendered—rendered emergency aid.

The [d]efendant had fled north from the location. His firearm was located about half a block away in the grass the next day. This [d]efendant was not himself located until September 10th when he with counsel turned himself into authorities."

The defense agreed the State had witnesses who would testify substantially as indicated. Defendant persisted in pleading guilty to count IV. The court accepted the guilty plea.

¶ 8                                                  C. Sentencing

¶ 9        In January 2019, the circuit court held a sentencing hearing. The court received a presentence investigation report (PSI) for its consideration. In aggravation, the State presented

victim impact statements, photographs of the crime scene, and photographs taken from defendant's Facebook profile which appeared to show him with firearms. The State also presented testimony from Brandon Smith's older sisters, Marquisha and Mariah Smith, as well as the lead detective investigating Brandon Smith's death, Andre Davis. In mitigation, the defense presented letters offered on behalf of defendant, a certificate of completion from Lincoln's Challenge Academy, and videos and photographs taken from Brandon Smith's cell phone which appeared to show him with firearms. The defense also presented testimony from defendant's mother, Denease Williams, and defendant's uncle, Ossie Coleman. We note the record on appeal does not contain the victim impact statements, and it contains only one of the letters offered on behalf of defendant. The following is gleaned from the PSI and the evidence presented.

¶ 10        Shortly before the shooting of Brandon Smith, video surveillance showed defendant and two females arriving at a nearby convenience store in a vehicle. The video showed defendant going inside the store and purchasing a bottle of liquor and the two women staying inside the vehicle and playing with a firearm. The women later reported defendant had left the firearm in their possession and they took photographs of themselves brandishing the firearm. The women also reported they returned the firearm to defendant after he returned to the vehicle, and they then went to the apartment complex where the shooting occurred. Prior to the shooting, Brandon Smith reported to others that defendant had been arguing with him about cannabis which defendant thought was stolen from him. Witnesses observed defendant discharge his firearm at Brandon Smith and then turn and discharge the firearm towards the three other men who were nearby. Seven nine-millimeter casings were discovered at the scene, all of which came from the same firearm that discharged the bullet which struck Brandon Smith and led to his death.

¶ 11 Marquisha Smith testified she first met defendant approximately a month before the shooting at her sister's apartment. When they first met, defendant was carrying a firearm on his hip, which was readily apparent. At one point, defendant had the firearm in his hand while he was sitting at a table. This caused Marquisha to become uncomfortable and leave.

¶ 12 Mariah Smith testified she had known defendant for several years and they were friends on Facebook. Mariah identified several photographs she obtained from defendant's Facebook profile, which appeared to show him holding firearms. Mariah acknowledged she was not aware when the photographs were taken or if the firearms were real.

¶ 13 Denease Williams testified her son was intelligent, caring, and a leader, and he had many people who cared for him. Williams testified defendant was picked on because of his size and she encouraged him to defend himself. Williams also testified defendant expressed remorse for his actions.

¶ 14 Ossie Coleman testified his nephew was a "good natured person." When asked if defendant's actions were out of character, Coleman testified, "Yes, in a way, but it was probably pressure."

¶ 15 Defendant's grandmother submitted a letter on defendant's behalf. Defendant's grandmother wrote defendant was a "good boy" who was "always mannerable and respectable to people, all ages." She further wrote defendant was "taught to pray and think about Jesus."

¶ 16 At the time of sentencing, defendant was 22 years old, stood 5 feet 6 inches, weighed 120 pounds, and had no children. He had a history of delinquency and criminal activity. His history of delinquency involved a battery for which he was sentenced to 12 months' probation. His history of criminal activity involved a felony aggravated driving under the influence (DUI) for

which he was sentenced to 18 months' probation. Defendant also had two traffic violations. Defendant attended high school through the tenth grade. He aspired to earn his General Equivalency Diploma and attend college. Prior to being incarcerated in this case, defendant reported having a history of employment at various restaurants and stores. Defendant reported being in good physical health and not suffering from any physical or mental disabilities or illnesses. Defendant admitted to drinking alcohol since the age of 18 and to smoking cannabis since the age of 16. He drank alcohol on weekends and smoked cannabis daily. Defendant admitted to being under the influence of alcohol and cannabis at the time of the shooting. Defendant did not believe his alcohol and cannabis use was problematic. Defendant reported successfully completing a residential drug treatment program in 2013.

¶ 17       With respect to recommendations, the State recommended defendant be sentenced to 25 years' imprisonment. In support, the State highlighted the nature and circumstances of the offense—that defendant, a convicted felon, chose to unlawfully carry a firearm and do so while consuming alcohol and cannabis and then discharge the firearm at least seven times in a residential area and at other individuals, which resulted in one of the bullets striking and killing Brandon Smith. The State acknowledged defendant had suggested prior to pleading guilty that he discharged the firearm in self-defense. The State argued, however, there was no evidence to support such a claim. The State also argued the recommended sentence would serve to deter others from (1) obtaining a firearm if they are felons, (2) carrying a firearm if they are consuming alcohol and drugs, and (3) threatening others and discharging a firearm multiple times in a residential area. In rendering its recommendation, the State acknowledged defendant had a group of supporters who cared for him, a minimal criminal history, and degree of remorse.

¶ 18 The defense recommended defendant be sentenced to eight years' imprisonment. In support, the defense highlighted defendant had taken responsibility by pleading guilty and was remorseful for his actions. The defense also highlighted defendant's age and minor criminal history. The defense asserted alcohol and drugs contributed to defendant's criminal behavior. The defense maintained defendant was an intelligent, good person who had the potential to turn his life around.

¶ 19 Defendant gave the following statement in allocution:

"I want to start off by apologizing, saying sorry to Brandon's family. I didn't hate Brandon. I didn't have any problems with Brandon. I do know his sister. And I never wanted none of this to happen. I just did what I—you know, the night this happened, I was under the influence but that didn't play a part in why I acted the way I acted. I thought we were all good. We were, you know, just hanging out. I don't know where the pot came from, but I was threatened, and also I tried to get away from the situation. I got—I jumped out the car and I was threatened and I did what I—you know, I thought people were going for guns. I just did what I had to do. I was scared. But at the end of the day I didn't want any of those events to happen that night to happen.

I have learned from this. Everybody make mistakes. I'm not a bad person. You know, I have to live. Regardless of if I'm in jail or free, I still have to live on and live my life, but I am sorry for what

happened that night. I mean I really—I really don't know what to say. I don't—I just want his family to know that I'm sorry, and I mean that's really about it."

¶ 20    After hearing the evidence and recommendations and comments from the parties, the circuit court issued the following oral pronouncement of its decision:

"The court has considered the [PSI]. I've considered the testimony presented by the State. I've considered the testimony presented on behalf of the defendant. I've considered the comments of counsel, as well as the comments of the defendant.

I've considered the statutory factors in aggravation as well as the statutory factors in mitigation. The two statutory factors in aggravation, the defendant does have the prior criminal history. He has the aggravated DUI, and he does have an adjudication in 2013 for battery. Then of course the other statutory factor in aggravation is the deterrent factor.

Mitigation, there is mitigation in this record. He's only [22] years of age. He has successfully completed Lincoln's Challenge. He has [pleaded] guilty. He has been able to manage to be employed, and he hasn't brought any children into this world that he's not prepared to help raise and/or support. So there is—and the fact that he has one aggravated DUI as his record, that's close to being—not having a criminal history. So those are the factors that the court has

- 8 -

considered.

This court over and over and over again finds itself sentencing young men to literally the rest of their lives in prison because they've killed another young man, and this case is no different than all of the others. And [the State] and [the defense] have talked about the deterrent factor. The deterrent factor doesn't rest with the courts, it doesn't rest with law enforcement; it rests with everyone in this courtroom, everyone in this courtroom who knows that young men, both Mr. Pearson and Mr. Smith, are running around carrying firearms. I can't tell you the number of times I've sentenced young men in cases like this, and does the deterrent factor make a difference? From this point of view, no. There is nothing the courts can do, there is nothing that the law enforcement community can do, no counselors out there, no psychiatrists, no teacher, it's up to everyone in this courtroom, every family member who knows there is a young man out there walking around with a firearm to do something about it. Otherwise we're going to be condemned to these hearings over and over and over again.

What happened in this case is an incredible tragedy. It's a tragedy for the family of the victim. It's a tragedy for Mr. Pearson and his family. From the letters submitted on behalf of both Mr. Pearson and the victim in this case, they were both loved young men.

Their families love them. They thought well of them. Mr. Pearson wasn't raised to be a criminal. He got drunk, he got high that night. He had the benefit of treatment back in 2013. He was actually in residential treatment. Then he was convicted of the [aggravated] DUI. He was ordered to get an evaluation and to deal with the problem that alcohol and whatever other substance might be plaguing him. But nonetheless on the night in question, he was probably drunk, he was high, and he was armed with a firearm, and he killed somebody.

I believe that from everything that has been presented at this point, [the State's] recommendation I believe is appropriate. It will be for a period of [25] years in the Illinois Department of Corrections."

¶ 21                                D. Motion to Reconsider the Sentence

¶ 22        In February 2019, defendant filed a motion to reconsider his sentence, arguing his sentence was excessive given the circuit court's failure to adequately consider his history, character, rehabilitative potential, social environment, age, minimal criminal history, remorse, and mitigating motivation for committing the offense. Following a March 2019 hearing, the court denied defendant's motion.

¶ 23        This appeal followed.

¶ 24                                II. ANALYSIS

¶ 25　　　　　On appeal, defendant argues the sentence imposed against him is excessive and an abuse of the circuit court's discretion given his guilty plea, remorse, minor criminal history, and outpouring of support from his family. The State disagrees.

¶ 26　　　　　As part of a negotiated plea agreement, defendant pleaded guilty to one count of aggravated battery with a firearm (720 ILCS 5/12-3.05(e)(1) (West 2016)) in exchange for the State moving to dismiss three counts of first degree murder. Aggravated battery with a firearm is a Class X felony (720 ILCS 5/12-3.05(h) (West 2016)), which carries a sentencing range of 6 to 30 years' imprisonment (730 ILCS 5/5-4.5-25(a) (West 2016)). The circuit court sentenced defendant in accordance with the State's recommendation to 25 years' imprisonment, a sentence which clearly falls within the applicable sentencing range.

¶ 27　　　　　A sentence that falls within the applicable sentencing range is generally reviewed for an abuse of discretion. *People v. Price*, 2011 IL App (4th) 100311, ¶ 36, 958 N.E.2d 341. This is because a circuit court is usually "in a better position than a court of review to determine an appropriate sentence based upon the particular facts and circumstances of each individual case." *Id.* (Internal quotation marks omitted.) A sentence that falls withing the applicable sentencing range "will not be deemed excessive and an abuse of the court's discretion unless it is 'greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense.' " *People v. Pina*, 2019 IL App (4th) 170614, ¶ 20, 143 N.E.3d 794 (quoting *People v. Fern*, 189 Ill. 2d 48, 54, 723 N.E.2d 207, 210 (1999)).

¶ 28　　　　　Here, there is no dispute the circuit court considered defendant's guilty plea, remorse, minor criminal history, and outpouring of support from his family in reaching its sentencing decision. Rather, defendant argues the court failed to accord the appropriate weight to

these facts. The court, however, had to balance these facts against the nature and circumstances of the offense—that defendant, a convicted felon, chose to unlawfully carry a firearm and do so while consuming alcohol and cannabis and then discharge the firearm at least seven times in a residential area and at other individuals, which resulted in one of the bullets striking and killing Brandon Smith. The court also had to balance these facts against the need for deterrence. Ultimately, the circuit court was in a far better position than this court to weight and balance the facts before it and determine an appropriate sentence. After our review of the facts presented at the sentencing hearing, we find the sentence imposed against defendant was neither excessive nor an abuse of the circuit court's discretion.

¶ 29          III. CONCLUSION

¶ 30          We affirm the circuit court's judgment.

¶ 31          Affirmed.